*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DENNIS/ANDERSON, Minors.

UNPUBLISHED
July 08, 2025
1:41 PM

No. 374754
Calhoun Circuit Court
Family Division
LC No. 2023-000167-NA

Before: O'BRIEN, P.J., and M. J. KELLY and KOROBKIN, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor children, CD, BD, RA, and NA, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND AND FACTS

In December 2022, multiple children were present in the home and witnessed a physical altercation between respondent and RA and NA's father, which resulted in respondent's arrest for domestic violence. After respondent's arrest, the Department of Health and Human Services (DHHS) temporarily placed the children with their fathers and other relatives. In February 2023, the DHHS petitioned the trial court to remove all 10 of respondent's children from her care, alleging that the children were improperly supervised during the December 2022 incident, that various children were present during five previous domestic violence altercations since 2015, and that respondent refused to sign paperwork to treat BD's increasing mental health needs. The trial court authorized the DHHS's petition, and at an adjudicative hearing in May 2023 respondent subsequently pleaded to allegations regarding her involvement in past domestic violence, involvement with Children's Protective Services (CPS), unemployment, and housing insecurity.

A service plan was put in place with the goal of reunification. Over the next 20 months, respondent attended 67% percent of her parenting time visits. Of the sessions that respondent attended, the DHHS caseworker testified that they went "okay" but that respondent favored the younger twins, RA and NA, over CD. Her parenting time with BD was suspended because of extreme behavior issues after visits with respondent. The caseworker testified that respondent

-1-

refused to acknowledge her role in the children's trauma throughout the pendency of the case. The caseworker did not observe any improvement in respondent's parenting skills, despite her completion of a 10-week parenting class. Respondent admitted to choosing random answers in her psychological evaluation and did not complete the assessment. Respondent did not have stable housing or consistent employment since the case's inception, and she temporarily lived with the father of RA and NA despite their history of domestic violence. From September 2023 through October 2024, respondent attended 61% of her domestic violence counseling sessions.

In May 2024, the Calhoun County Prosecutor's Office filed a supplemental petition for termination of respondent's parental rights to all 10 children. At the termination hearing in October 2024, the caseworker testified about respondent's lack of participation and progress throughout the proceedings. Specifically, she testified that the barriers to reunification that existed at the outset of the case still existed at the time of the hearing—including domestic violence, parenting skills, unemployment, housing insecurity, and a substantiated history with CPS—and that she did not believe that additional time or services would help respondent rectify these barriers in a reasonable amount of time, noting the 20-month duration of the case.

Following the hearing, the trial court placed its findings on the record and terminated respondent's parental rights to CD, BD, RA, and NA under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood that child will be harmed if returned to the home).[1] This appeal followed.

## II. STANDARDS OF REVIEW

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Once a statutory ground for termination is established, the trial court must then determine whether termination is in the child's best interests. *Id*. "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). "We must defer to the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

"We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and . . . the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013) (quotation marks and citation omitted).

---

[1] The trial court also terminated the parental rights of the father of RA and NA and the father of CD and BD, but neither father is a party to this appeal. The trial court found that termination of respondent's parental rights to her six other children was unnecessary because they were placed with their respective fathers.

## III. ANALYSIS

## A. STATUTORY GROUNDS

Respondent contends that the trial court clearly erred by finding statutory grounds for termination of her parental rights. We disagree.

## 1. CONDITIONS CONTINUE TO EXIST

For termination to be proper under MCL 712A.19b(3)(c)(*i*), (1) 182 or more days must have elapsed since the initial dispositional order, (2) the conditions leading to adjudication must continue to exist, and (3) there must be "no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." This Court has held that termination is appropriate when "the totality of the evidence" supported that the respondent-parent did not accomplish "any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

In the present case, the initial disposition order was filed in May 2023, and the termination trial began in October 2024—534 days later. Therefore, "182 or more days" had "elapsed since the issuance of an initial dispositional order." MCL 712A.19b(3)(c)(*i*).

The trial court did not clearly err by finding that the conditions leading to the adjudication continued to exist. Respondent argues that "improper supervision" as a condition leading to adjudication cannot be "held against" her as a continuing condition because she had not had custody of the children since their removal. However, respondent mischaracterizes the pertinent analysis. The focus of our analysis is not that improper supervision could no longer occur because the children had been removed, but that respondent failed to rectify the underlying conditions caused by her actions in perpetrating domestic violence with her children present leading to her arrest, which exposed the children to abuse and caused them to be without a caregiver, forcing their placement elsewhere. Respondent's argument that no new issues of improper supervision, i.e., exposing the children to domestic violence, arose lacks merit because MCL 712A.19b(3)(c)(*i*) requires only that the *conditions* leading to adjudication "continue to exist," not that new specific instances must occur. Further, the record amply supports that respondent did not rectify the condition of domestic violence because she continued to engage with RA and NA's father, with whom she shared a history of domestic violence: the trial court heard testimony from the caseworker that RA and NA's father allowed respondent to temporarily live with him in January 2024—almost a year after the children were removed—and that, despite participating in domestic violence counseling, respondent was "still putting herself in situations in which domestic violence could occur."

Similarly, respondent contends that the trial court "penalized" her for her history of domestic violence and CPS involvement even though no new instances occurred during the proceedings. As previously stated, MCL 712A.19b(3)(c)(*i*) does not mandate that new instances must occur but rather that the conditions leading to adjudication "continue to exist." Moreover, when a respondent in a termination of parental rights case is a perpetrator of domestic violence, "the commission of domestic violence is an appropriate concern. Similarly, termination may be 'properly based on the fact that [a] respondent's own behaviors were directly harming the children

or exposing them to harm.' " *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022), citing *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). CPS substantiated allegations that respondent was the perpetrator of domestic violence against various partners and relatives in six instances from 2015 to 2022 for which her children were present, including her most recent arrest for domestic violence against RA and NA's father in December 2022. Moreover, she admitted to attacking a previous partner with a machete. Therefore, the trial court did not clearly err by considering respondent's substantiated CPS history as a perpetrator of domestic violence in its determination to terminate her parental rights.

Respondent contends that the other conditions leading to adjudication, including parenting skills, unemployment, and housing insecurity, were also rectified. But the record reflects that respondent did not maintain consistent employment or obtain stable housing for the pendency of the case. Regarding respondent's parenting skills, the caseworker did not see any improvement after respondent completed a 10-week parenting class. She never returned any of the materials in an assigned parenting workbook. Respondent demonstrated "a lack of regard" for her children's needs and did not acknowledge her role in causing trauma to the children. Moreover, she did not participate in a majority of the children's services and only attended a maximum of 67% of parenting time offered throughout the case. Notably, the trial court suspended respondent's parenting time with BD because he experienced trauma triggers and extreme behavior issues after her visits, and the caseworker testified that respondent favored RA and NA over CD during visits. Overall, the trial court did not clearly err in finding that "the totality of the evidence" demonstrated that respondent had not accomplished any "meaningful change in conditions" that led to adjudication. *In re Williams*, 286 Mich App at 272.

Additionally, MCL 712A.19b(3)(c)(*i*) requires that "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." The determination of what constitutes a reasonable time for the conditions to be rectified includes both how long it will take for the parent to improve conditions and how long the children can wait for the parent's improvement. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991). This Court has stated that the Legislature did not intend children to be left in foster care indefinitely. *Id*. at 647.

In this case, at the time of trial, the children had been removed from respondent's care for 20 months. The trial court heard testimony that the twins, RA and NA, were two months old when they were removed, that they called their new caregiver "mom," and that they did not recognize respondent. Regarding the older children, CD and BD, the caseworker testified that they bonded with their caregivers, who provided them with much-needed structure. Specifically, the caseworker testified that "[t]he structure really does help the older two boys" and that "I don't see that happening if they're returned home to Mom. And I do have concerns about Mom's ability to be able to continue having those services be provided to the kids long term." Additionally, the caregiver testified that permanency was particularly important for CD who "ha[d] a lot of anxiety when it [came] to not knowing what's going to happen." Given these facts, the caseworker did not believe that the children would return to respondent's care in a timely manner or that additional time would change the circumstances. Therefore, the trial court did not clearly err by finding that respondent would be unable to rectify the conditions that led to adjudication within a reasonable time.

## 2. REASONABLE LIKELIHOOD THAT CHILD WILL BE HARMED

Under MCL 712A.19b(3)(j), termination of parental rights is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Harm under MCL 712A.19b(3)(j) includes both emotional and physical harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Termination is appropriate under MCL 712A.19b(3)(j) when a respondent's "own behaviors were directly harming the children or exposing them to harm." *In re Plump*, 294 Mich App at 273.

The trial court did not clearly err by finding that this statutory ground was satisfied. Contrary to respondent's argument, the record reflects that respondent did not resolve her domestic violence issues: she continued to engage, and briefly live, with RA and NA's father, with whom she shared a history of domestic violence that multiple children witnessed. Thus, respondent's own behavior in choosing to reside with RA and NA's father placed the children at continued risk of physical and emotional harm. Given that respondent failed to rectify her domestic violence issues during this case, that she perpetrated five previous instances of domestic violence, and that her behavior contributed to placing the children at risk of harm, the trial court did not err by finding that it was reasonably likely that the children would experience emotional or physical harm if returned to respondent's care.

## B. BEST INTERESTS

Respondent also contends that the trial court clearly erred by finding that termination of respondent's parental rights was in the children's best interests. We disagree.

"The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "In making its best-interest determination, the trial court may consider the whole record . . . ." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks omitted). The court may consider factors including "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). We also consider the length of time that the child has been removed from a parent and whether it was likely "that the child could be returned to [his or] her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). Additionally, when more than one child is involved in a case, a trial court must consider each child's best interests separately. See *In re Olive/Metts*, 297 Mich App at 42.

Respondent argues that terminating her parental rights to some of the children but not others was not in their best interests. We conclude, however, that the trial court did not clearly err by finding that terminating respondent's parental rights to 4 of her 10 children was in their best interests. The trial court determined that termination was not in the best interests of the other six children because they were safely placed with their fathers, whereas that was not the case with CD,

BD, RA, and NA, whose fathers' parental rights were also being terminated. "Although in most cases it will be in the best interests of each child to keep brothers and sisters together . . . , if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control." *Id*. (quotation marks and citation omitted).

In this case, the trial court did not clearly err in finding that termination was in the best interests of four children. Specifically, the twins, RA and NA, were two months old at the time of removal and spent the majority of their lives in foster care to the extent that they called their caregiver "mom" and did not recognize respondent. Because of their young age, their "need for permanence," and their strong bond with their caregiver, the trial court determined that it was in the twins' best interests to terminate respondent's parental rights. The trial court acknowledged that respondent loved the children but found that she was not able to parent them appropriately and would not be able to do so in a reasonable amount of time.

The trial court similarly found that it was in CD's and BD's best interests to terminate respondent's parental rights. The trial court found that parenting time with respondent caused anxiety for CD and that he was "very guarded" with her. The caseworker testified that CD and respondent did not have a "true strong bond." Regarding BD, "[d]espite the plethora of services," the trial court suspended respondent's parenting time in May 2023, which remained suspended for the rest of the case, because respondent's visits triggered extremely harmful emotional and behavioral reactions for BD. In contrast, BD and CD had a strong bond with their grandmother, with whom they were placed, and made tremendous progress while in her care. Given their age, the length of time that the children had been removed from respondent's care, the lack of progress made by respondent in addressing the barriers to reunification, and the strong bond with their caregivers, the trial court did not clearly err by finding that termination served the children's best interests.

Next, respondent argues that the trial court erred by not addressing the fact that CD and BD were placed with relatives. We conclude, however, that the trial court expressly considered CD and BD's relative placement in its best-interest determination even though their grandmother was initially misidentified by the trial court as a foster parent. "A child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). "Generally, a child's placement with relatives weighs against termination . . . ." *Id*. (quotation marks and citation omitted). Grounds for reversal may exist if consideration of relative placement is "wholly absent from the trial court's best-interests determination." *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 5-6. But if the record shows that a trial court is aware that a child is in an adoptive relative placement, then such considerations are not wholly absent. See *id*.

In the present case, the trial court heard testimony from CD and BD's paternal grandmother that she was willing to adopt them after caring for them since December 2022 upon respondent's arrest. Despite testimony at trial of the grandmother's relation to CD and BD, the trial court initially identified the grandmother as a foster parent in its oral opinion, finding that CD and BD were "extremely bonded to their foster parent who [was] just a fierce advocate for them." However, upon prompting by petitioner, the trial court clarified that it was aware that the children were placed with a relative and found that guardianship would not be appropriate given the specific facts of the case. Accordingly, the trial court specifically considered the fact that CD and BD were

placed with a relative even though she was initially misidentified. Therefore, the trial court did not clearly err by finding that termination of respondent's parental rights was in CD and BD's best interests despite their placement with a relative. See *id.*; see also *In re Gonzales/Martinez*, 310 Mich App at 434.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Daniel S. Korobkin